UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LUIS DIEGO ZAPATA FONSECA,<br><br>Plaintiff,<br><br>v.<br><br>GOYA FOODS INC.,<br><br>Defendant. | Case No. 16-CV-02559-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Plaintiff Luis Fonseca ("Plaintiff") brings this putative class action against Goya Foods Inc. ("Defendant"). Before the Court is Defendant's motion to dismiss Plaintiff's complaint. ECF No. 16 ("Mot."). The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and thus VACATES the motion hearing set for September 15, 2016, at 1:30 p.m. The initial case management conference, currently set for September 15, 2016, at 1:30 p.m., remains as set. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss

**I.   BACKGROUND**

  **A. Factual Background**

This case concerns the divergent fates of the octopus and the squid. "In recent years, the

1
Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

cost of octopus has increased rapidly as octopus populations have dwindled around the world due to over-fishing." ECF No. 1 ("Compl.") ¶ 5. SeafoodSource.com reported a 45% drop in octopus supplies between 2013 and 2014, and the United Nations has stated that "octopus populations [are] overexploited." *Id.* On the other hand, while "octopus populations have been declining," the jumbo squid population has "been thriving." *Id.* ¶ 6. According to biologists, the jumbo squid "is thriving due to its ability to adapt to changing ocean conditions caused by global warming." *Id.*

Both the octopus and squid are culinary delicacies. Plaintiff avers that, "due to similarities in texture, squid can easily be substituted for octopus without the consumer being able to tell the difference," particularly if the product is "sold in a sauce like a garlic sauce or marinara sauce." *Id.* ¶ 7. Defendant offers four products to consumers that it labels and sells as octopus: Octopus in Garlic, Octopus in Olive Oil, Octopus in Pickled Sauce (Marinara), and Octopus in Hot Sauce (collectively, the "Octopus Products"). *Id.* ¶ 8. Plaintiff contends, however, that these products actually contain squid instead of octopus, and that Defendant "intentionally replaced the octopus . . . with squid . . . to save money because it knew an ordinary consumer would have trouble distinguishing the difference." *Id.* ¶ 9.

Plaintiff avers that he purchased Defendant's Octopus Products on Amazon.com "in reliance on the representation that [the products] contained octopus." *Id.* ¶ 11. "Independent DNA testing [has] determined," however, that Defendant's "Octopus Products [were] actually jumbo squid and not octopus." *Id.* ¶ 2. Plaintiff alleges that he would not have purchased Defendant's Octopus Products had he known that they were made of squid.

**B. Procedural History**

Plaintiff filed the complaint in this action on May 11, 2016. The complaint asserts nine causes of action: (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) breach of the implied warranty of fitness, (4) unjust enrichment, (5) violation of California's Consumer Legal Remedies Act ("CLRA"), (6) violation of California's Unfair Competition Law ("UCL"), (7) violation of California's False Advertising Law ("FAL"), (8) negligent misrepresentation, and (9) fraud.

2

Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiff brings his CLRA, UCL, and FAL claims on behalf of himself and a putative subclass of all persons who purchased Octopus Products in California. *See id.* ¶ 50. Plaintiff brings his other claims on behalf of himself and a putative class of all persons in the United States who purchased Octopus Products. Defendant moved to dismiss the complaint on July 11, 2016. Plaintiff filed a response on August 15, 2016, and Defendant filed a reply on August 25, 2016. ECF No. 21 ("Opp'n"); ECF No. 22 ("Reply").

## II.   LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.   DISCUSSION**

The contentions in Defendant's motion fall into two categories: arguments that apply to all causes of action, and arguments that apply only to specific causes of action.

As to the first category, Defendant contends (1) that Plaintiff's claims fail because California law does not apply to conduct that has no connection to California, (2) that Plaintiff can not bring claims for products that he did not purchase, and (3) that Plaintiff has failed to allege facts sufficient to warrant relief.

As to the second category, Defendant contends (1) that Plaintiff's express warranty claim fails because Plaintiff did not provide pre-suit notice, (2) that Plaintiff can not seek equitable relief under the UCL, FAL, CLRA, and doctrine of unjust enrichment, and (3) that Plaintiff has failed to satisfy the heightened pleading standards for his claims sounding in fraud.

The Court addresses these categories in turn.

**A.   Arguments Pertaining to All Causes of Action**

**1.   Putative Classes and Application of California Law**

Defendant's argument that Plaintiff can not bring a nationwide class action on behalf of non-California residents proceeds in two parts.  First, Defendant contends that Plaintiff can not assert "claims under the CLRA, UCL, and FAL" on behalf of "non-California residents," because these California statutes do not apply to conduct which occurs outside California.  *Id.* at 5.

Plaintiff, however, does not assert his CLRA, UCL, and FAL claims on behalf of non-California residents.  Rather, Plaintiff brings these claims "individually and on behalf of the

proposed Subclass," Compl. ¶¶ 50, 58, 65, which the complaint expressly defines as all persons "who purchased the Octopus Products in California," *id.* ¶ 17. Hence, as Defendant acknowledges in its Reply, whether or not the CLRA, UCL, and FAL applies to conduct outside of California is irrelevant: "Plaintiff [has] limit[ed] his CLRA, UCL, and FAL claims to a California subclass." Reply at 1–2. Consequently, Defendant's motion to dismiss Plaintiff's CLRA, UCL, and FAL claims insofar as they seek relief on behalf of non-California residents is DENIED.

Second, Defendant argues that Plaintiff's remaining claims "fail under California's governmental interests test." Mot. at 5. According to Defendant, under *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), "each foreign state has an interest in applying its law to transactions within its borders." Mot. at 5 (citing 666 F.3d at 593). Thus, "if California law were applied to [a nationwide] class, foreign states would be impaired in their ability to calibrate liability to foster commerce." 666 F.3d at 593. Accordingly, in *Mazza*, the Ninth Circuit reversed the district court's decision to certify a nationwide class, and concluded that, "[u]nder the facts and circumstances of this case," certain choice-of-law rules dictated that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Defendant's reliance upon *Mazza* is unavailing. This Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations. As the Court explained in *Brazil v. Dole Foods Co., Inc.*, 2013 WL 5312418, *11 (N.D. Cal. Sept. 23, 2013), another food mislabeling case, "the Ninth Circuit's opinion in *Mazza*—which was itself decided at the class certification stage and not on a motion to dismiss—depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims." Defendants in *Dole* presented no such choice of law analysis in their motion to dismiss briefing. "Absent the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza*," the Court was unable in *Dole* to determine . . . whether California's choice-of-law rules apply to bar all, some, or none of [plaintiff's] class claims." *Id.*; *see also Doe v. Successfulmatch.com*, 2014 WL 1494347, *7 (N.D. Cal. Apr. 16, 2014) (following *Dole* and

1 stating that "numerous other courts within the Ninth Circuit . . . have declined, even
2 after *Mazza,* to conduct the choice-of-law analysis at the pleading stage."); *Werdebaugh v. Blue*
3 *Diamond Growers*, 2013 WL 5487236, *15–*16 (N.D. Cal. Oct. 2, 2013) (same).

4 As in *Dole*, Defendant's briefing does not include a choice of law analysis, and there is no
5 evidence in the record that the conflict between California's law and foreign law "is so severe as
6 to preclude applying California law to [Plaintiff's nationwide] class claims." *Id.* at *16. Thus,
7 consistent with this Court's prior decisions, the Court declines to dismiss Plaintiff's nationwide
8 class action claims at this time. Defendant's motion to dismiss Plaintiff's claims because Plaintiff
9 can not assert them on behalf of a nationwide class is DENIED without prejudice.

**2. Substantial Similarity of Products**

11 Next, Defendant claims that Plaintiff has improperly grouped Defendant's Octopus
12 Products—Octopus in Garlic, Octopus in Olive Oil, Octopus in Pickled Sauce, and Octopus in Hot
13 Sauce—together. According to Defendant, Plaintiff does not have standing to assert "claims for . .
14 . products [that] he did not purchase." Mot. at 10. Consequently, Plaintiff may be able to assert
15 his claims against some, but not all, of Defendant's Octopus Products.

16 Defendant's arguments fail for two reasons. First, paragraph 8 of the complaint defines
17 Octopus Products as including the four varieties described above. Compl. ¶ 8. Next, paragraph 11
18 states that "Plaintiff purchased [Defendant's] Octopus Products from Amazon.com," and that "he
19 would not have purchased [Defendant's] Octopus Products . . . if he had known that they
20 contained squid instead of octopus." *Id.* ¶ 11. Taking these allegations in the "light most
21 favorable to" Plaintiff, which the Court must do on a motion to dismiss, it is plausible that Plaintiff
22 purchased all four types of Octopus Products. *Manzarek*, 519 F.3d at 1031. Thus, Defendant's
23 argument—that Plaintiff does not have standing to assert claims for products that he did not
24 purchase—lacks merit.

25 Second, even if Plaintiff only purchased one or two types of Octopus Products,
26 Defendant's contentions would still be unavailing. The Ninth Circuit has never held that a
27 plaintiff must buy every product in a product line in order to have standing to bring a class action

6
Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   lawsuit. Instead, as the district court explained in *Miller v. Ghirardelli Chocolate Co.*, 912 F.
2   Supp. 2d 861, 869 (N.D. Cal. 2012), "[t]he majority of the courts that have carefully analyzed the
3   question hold that a plaintiff may have standing to assert claims for unnamed class members based
4   on products he or she did not purchase so long as the products and alleged misrepresentations are
5   substantially similar." The *Miller* court went on to note that "substantial similarity" could be
6   ascertained by examining "product composition" and "whether the alleged misrepresentations are
7   sufficiently similar across product[s]." *Id.*

8   Consistent with *Miller*, this Court has "applied the 'substantial similarity' approach when
9   analyzing standing challenges in the food-misbranding context." *Brazil*, 2013 WL 5312418, *7;
10  *see also id.* (citing cases). As the Court has explained, "the entire point of the substantially similar
11  approach" is to serve two goals: to "ensure that the plaintiff is seeking to represent only those
12  individuals who have suffered essentially the same injury as the plaintiff," and to "recognize[] that
13  the definition of the plaintiff's injury is not so narrow as to encompass only the exact set of
14  circumstances that led to the plaintiff's suit." *Id.* (internal quotation marks omitted).

15  In the instant case, the same Defendant manufactures all of the Octopus Products. The
16  product packaging for the Octopus Products is substantially similar. According to Plaintiff,
17  Defendant has implemented a common scheme to use squid rather than octopus. Plaintiff further
18  alleges that "due to similarities in texture, squid can easily be substituted for octopus without the
19  consumer being able to tell the difference[,] *particularly when sold in a sauce like garlic sauce or*
20  *marinara sauce.*" Compl. ¶ 7 (emphasis added). All four of the Octopus Products—Octopus in
21  Garlic, Octopus in Olive Oil, Octopus in Pickled Sauce, and Octopus in Hot Sauce—are sold in
22  some type of sauce. Considering these circumstances, the Court finds that the Octopus Products
23  are substantially similar to one another. Accordingly, Defendant's motion to dismiss Plaintiff's
24  causes of action insofar as they pertain to Octopus Products which Plaintiff did not purchase is
25  DENIED.

26  **3. Facts Sufficient to Warrant Relief**

27  Defendant next contends that Plaintiff has not alleged facts sufficient to merit relief.

28

Defendant's makes three specific arguments. First, "Plaintiff has not alleged . . . that Amazon is a pass-through distributor of [Octopus Products] such that representations made on the Amazon website can be attributed to [Defendant]." Mot. at 6. Second, Plaintiff "fails to provide facts showing when he purchased" the Octopus Products, "so any claims may be barred by the applicable statute of limitations." *Id*. Third, Plaintiff alleges that "independent DNA testing" demonstrated that Defendant used squid instead of octopus. According to Defendant, "[a] mere reference to a test result, without more, is devoid of the factual allegations required by the federal pleading standards." *Id.* at 6–7.

Defendant's first two arguments can be addressed in short order. As Plaintiff points out, Plaintiff did "not rely [up]on representations made on Amazon's website." Opp'n at 5. Plaintiff purchased the Octopus Products from Amazon, but Plaintiff "relied [up]on [Defendant's] representation on the box that the product contained octopus." *Id.*; *see also* Compl. ¶ 8 (describing how Octopus Products are packaged in boxes and showing pictures of the box for each type of Octopus Product). Defendant's argument as to representations made on Amazon's website is therefore inapposite.

Next, under Federal Rule of Civil Procedure 8(a)(2), Plaintiff's complaint must, in general, provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Based on the parties' briefing and the Court's research, the case law is unclear as to whether Rule 8(a)(2) requires Plaintiff to state the time period that he purchased the Octopus Products. Moreover, in Defendant's Reply, Defendant focuses entirely upon Plaintiff's citation to "independent DNA testing." Finally, as discussed below, Plaintiff failure to provide detail on when he purchased an Octopus Product is fatal for Plaintiff's negligent misrepresentation and fraud claims, because these claims are subject to Federal Rule of Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) imposes heightened pleading requirements, which includes a requirement that plaintiffs specify when they purchased a certain product. For all of these reasons, for Plaintiff's causes of action subject to Rule 8(a)(2) and not Rule 9(b), the Court need not reach the issue of whether Plaintiff's failure to specify when he purchased the Octopus Products

warrants dismissal.

Finally, Defendant's complaints about "[i]ndependent DNA testing," Compl. ¶ 2, is essentially an argument that Plaintiff should have provided more information: "[t]here are no allegations" in the complaint "of when this testing was done, who performed the testing, what were the results of the testing, where the testing took place, or the type of equipment or scientific method used," Reply at 5. Plaintiff, for instance, does not state whether "the testing . . . followed the protocol established by the U.S. Food and Drug Administration ['FDA'] for DNA testing of seafood." *Id.*

In support of its position, Defendant relies entirely upon the U.S. Supreme Court's decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and Ninth Circuit opinions interpreting these two cases. *See, e.g.*, Reply at 5. *Twombly* and *Iqbal*, however, are inapposite to the instant case.

As the U.S. Supreme Court has explained, "[t]wo working principles underlie our decision[s]" in *Twombly* and *Iqbal*. 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

The U.S. Supreme Court applied these principles in *Twombly* to dismiss plaintiffs' complaint, as plaintiffs' complaint contained "merely legal conclusions" rather than plausible factual allegations of an antitrust conspiracy. 550 U.S. at 564. Similarly, the U.S. Supreme Court dismissed the complaint in *Iqbal* because plaintiff had simply made "bare assertions" which "amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." 556 U.S. at 681. In accord with *Twombly* and *Iqbal*, the Ninth Circuit has held that a "court need not . . . accord an assumption of truthfulness to *legal conclusions* that are

1  not supported by factual allegations in the Complaint or that are contradicted by documents
2  referred to in the Complaint." *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 957
3  (9th Cir. 2011) (emphasis added).

4  However, in the instant case, Plaintiff's allegations are not legal conclusions, and the
5  complaint does not simply recite the elements of a cause of action. Rather, the complaint alleges
6  that "[i]ndependent DNA testing determined that [Defendant's] Octopus Products are actually
7  jumbo squid and not octopus." Compl. ¶ 2. This is a factual assertion, not a legal conclusion
8  disguised as a factual assertion. Put another way, whether a product labeled as "Octopus" contains
9  squid instead of octopus is a question of fact, not a question of law, and asserting that DNA testing
10 found that the Octopus Products contained squid is a plausible factual allegation.

11 As the U.S. Supreme Court explained in *Twombly*, "[a]sking for plausible grounds to infer
12 [illegal conduct] does not impose a probability requirement at the pleading stage; it simply calls
13 for enough fact to raise a reasonable expectation that discovery will reveal evidence of
14 illegal[ity]." 550 U.S. at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy
15 judge that actual proof of those facts [in the complaint] is improbable, and that a recovery is very
16 remote and unlikely." *Id.* (internal quotation marks omitted). Here, Plaintiff's statements about
17 DNA testing are "plausible on their face," and would, if true, entitle Plaintiff to relief. *Blantz v.*
18 *Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 923 (9th Cir.
19 2013).

20 As a final point, Defendant's argument regarding whether the independent DNA testing in
21 this case comports with FDA standards is unavailing. Such questions are inquiries that the parties
22 should explore in discovery. Dismissal, however, is not warranted. Accordingly, Defendant's
23 motion to dismiss Plaintiff's complaint for failing to allege facts sufficient to warrant relief is
24 DENIED.

### B. Arguments Pertaining to Specific Causes of Action

#### 1. Pre-Suit Notice (breach of express warranty cause of action)

27 Plaintiff alleges that Defendant "expressly warranted that its Octopus Products contained

1   octopus"—a warranty that Defendant breached when it used squid instead of octopus. Compl. ¶

2   25. Defendant moves to dismiss Plaintiff's express warranty claim because Plaintiff failed "to

3   provide pre-suit notice of any alleged breach." Mot. at 12.

4         In general, California law requires buyers to provide sellers with pre-suit notice before

5   bringing a breach of express warranty claim. Cal. Com. Code § 2607(3)(A). However, this notice

6   requirement does not apply if "injured consumers" assert a breach of express warranty claim

7   "against manufacturers with whom they have not dealt." *Greenman v. Yuba Power Prods., Inc.*,

8   377 P.2d 897, 900 (Cal. 1963). A car buyer need not, for instance, provide pre-suit notice to the

9   manufacturer if the car was purchased at a third party dealership. *Mui Ho v. Toyota Motor Corp.*,

10  931 F. Supp. 2d 987, 994–95 (N.D. Cal. 2013).

11        Here, Plaintiff alleges that he purchased an Octopus Product from a third party retailer,

12  Amazon. Compl. ¶ 11. Thus, under *Greenman* and *Mui Ho*, Plaintiff did not need to provide

13  Defendant pre-suit notice. Indeed, Defendant acknowledges this point in its Reply, and concedes

14  that its arguments regarding pre-suit notice are unavailing. *See* Reply at 8 n.2 (noting that,

15  because Plaintiff purchased an Octopus Product from a third party, Defendant "withdraws its

16  argument that pre-suit notice is required"). Accordingly, Defendant's motion to dismiss Plaintiff's

17  breach of express warranty claim is DENIED.

18        **2. Equitable Relief (CLRA, UCL, FAL, and unjust enrichment causes of action)**

19        Next, Defendant asserts that Plaintiff's CLRA, UCL, FAL, and unjust enrichment claims

20  fail for two reasons. First, Defendant argues that Plaintiff does not have "standing to seek

21  injunctive relief" under these causes of action because Plaintiff does not allege that he "intends to

22  purchase [Defendant's] Octopus Products again." Reply at 3. Second, Defendant argues that

23  Plaintiff can not seek equitable relief, including an injunction, under these causes of action

24  because "an adequate remedy exists at law." Mot. at 11. The Court need not address Defendant's

25  first argument—standing to seek future injunctive relief—because, as discussed below, the Court

26  finds that Plaintiff has an adequate remedy at law, and thus can not seek an injunction at all.

27        In seeking redress for a wrong, a litigant may obtain equitable or legal remedies. The

28

11
Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   "traditional" equitable remedy is an injunction. *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 390

2   (2006). The "traditional" legal remedy is monetary damages. *Curtis v. Loether*, 415 U.S. 189,

3   196 (1974).

4   As this Court has stated, "[a] plaintiff seeking equitable relief in California must establish

5   that there is no adequate remedy at law available." *Philips v. Ford Motor Co.*, 2015 WL 4111448,

6   *16 (N.D. Cal. July 7, 2015). Similarly, in *In re Ford Tailgate Litigation*, 2014 WL 1007066, *5

7   (N.D. Cal. Mar. 12, 2014), the district court dismissed certain equitable relief claims and noted

8   that, where an equitable relief claim "relies upon the same factual predicates as a plaintiff's legal

9   causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal

10  causes of action." These statements in *Philips* and *In re Ford* are consistent with well-established

11  U.S. Supreme Court and Ninth Circuit precedent: "it is axiomatic that a court should determine the

12  adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cnty. Pub.*

13  *Sch.*, 503 U.S. 60, 75–76 (1992); *accord Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)

14  ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the

15  moving party has an adequate remedy at law.").

16  In the instant case, Plaintiff seeks only equitable relief under the CLRA, UCL, FAL, and

17  doctrine of unjust enrichment. Indeed, although plaintiff may seek equitable and legal relief under

18  the CLRA, Plaintiff in the instant case "only seeks injunctive relief" under the CLRA. Compl. ¶

19  56. Next, "[a]part from civil penalties, which are not at issue here, the UCL and FAL provide for

20  only equitable relief." *Duttweiler v. Triumph Mortorcycles (Am.) Ltd.*, 2015 WL 4941780 (N.D.

21  Cal. Aug. 19, 2015). Finally, "unjust enrichment applies only in the absence of an adequate

22  remedy at law." *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012).

23  Plaintiff's request for equitable relief under the CLRA, UCL, FAL, and doctrine of unjust

24  enrichment, however, is unavailing because Plaintiff has an adequate remedy at law. The parties

25  do not dispute that Plaintiff's other five causes of action—for breach of express warranty, breach

26  of the implied warranty of fitness, breach of the implied warranty of merchantability, negligent

27  misrepresentation, and fraud—allow Plaintiff to recover monetary damages and thus provide

28

United States District Court
Northern District of California

Plaintiff a remedy at law.  Plaintiff, moreover, does not contend that these five causes of action provide him an inadequate remedy.  Thus, because Plaintiff's CLRA, UCL, FAL, and unjust enrichment causes of action "rel[y] upon the same factual predicates as . . . [P]laintiff's legal causes of action"—that Defendant used squid instead of octopus—they must be dismissed.

Plaintiff's citation to *Hendricks v. Starkist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014), *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012), and *Keiholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D. Cal. Mar. 20, 2009), is inapposite.  Defendants in these three cases did not argue, and the district court did not consider, whether plaintiffs had an adequate remedy at law.  In fact, in one of these cases—*Keiholtz*—plaintiffs did not even plead an adequate remedy at law.  Plaintiffs instead asserted claims only for equitable relief under the UCL, CLRA, and doctrine of unjust enrichment.  *Id.* at *1.

Accordingly, because Plaintiff has an adequate remedy at law, Defendant's motion to dismiss Plaintiff's CLRA, UCL, FAL, and unjust enrichment claims is GRANTED.  Plaintiff, however, shall have leave to amend, as amendment would not be futile.  Under the CLRA, for instance, a plaintiff may only seek damages after providing defendant with 30 days "prefiling notice."  *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1219 (E.D. Cal. 2013).  In the complaint, Plaintiff alleges that he sent Defendant a CLRA notice letter on May 11, 2016, and that Plaintiff "will amend this complaint to include a request for damages as permitted by" the CLRA.  Compl. ¶ 55.  Similarly, Plaintiff may be able to distinguish his UCL, FAL, and unjust enrichment claims by demonstrating that they are not rooted in a common factual predicate as Plaintiff's other causes of action.  Plaintiff's CLRA, UCL, FAL, and unjust enrichment claims are DISMISSED WITHOUT PREJUDICE.

### 3. Rule 9(b) (fraud and negligent misrepresentation causes of action)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy Rule 9(b)'s heightened pleading

13

standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted).

Here, Plaintiff's first three causes of action, for breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness do not sound in fraud. Plaintiff's next four causes of action, under the UCL, FAL, CLRA, and the doctrine of unjust enrichment, have already been dismissed. Thus, only Plaintiff's eighth and ninth causes of action, for negligent misrepresentation[1] and fraud, sound in fraud and are subject to Rule 9(b)'s heightened pleading requirements.

As noted above, under Rule 9(b), Plaintiff must allege an account of the (1) time, (2) place, (3) the specific content of the false representations, and (4) the identities of the parties to the misrepresentations. *Swartz*, 476 F.3d at 764. The complaint appears to satisfy at least some of these requirements. As to the content of the misrepresentations, for example, the complaint alleges that Defendant's Octopus Products are mislabeled—the box states that they are octopus when they are squid.

However, the complaint suffers from a critical flaw: it does not specify when Plaintiff saw the alleged misrepresentations, when Plaintiff purchased the Octopus Products, and when Defendant began using squid instead of octopus in its Octopus Products. Instead, the complaint states only that Plaintiff purchased the Octopus Products during the "class period," without providing dates defining this "class period" in the complaint. Compl. ¶ 11.

---

[1] Although "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, . . . most district courts in California hold that it does." *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, *7 (N.D. Cal. Sept. 17, 2012).

14
Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

In a similar context, this Court dismissed a fraud claim in *In re Anthem, Inc. Data Breach Litigation*, 2016 WL 589760, *23 (N.D. Cal. Feb. 14, 2016). In *In re Anthem*, a data privacy case, plaintiffs had failed to provide information on when certain data "privacy notices were received or when certain [privacy] statements were made" by defendants. *Id.* Thus, it was not possible to "establish that [p]laintiffs relied upon or were deceived by promises that [d]efendants made to [p]laintiffs prior to the data breach." *Id.*

Consistent with *In re Anthem*, Defendant's motion to dismiss Plaintiff's negligent misrepresentation and fraud causes of action is GRANTED. Plaintiff, however, shall have leave to amend. It is possible that, after amendment, Plaintiff will be able to allege facts sufficient to satisfy Rule 9(b). Accordingly, Plaintiff's negligent misrepresentation and fraud causes of action are DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. In particular:

1. Defendant's motion to dismiss Plaintiff's first cause of action, for breach of express warranty, is DENIED. Thus, Plaintiff's first cause of action for breach of express warranty survives dismissal.

2. Defendant did not specifically move to dismiss Plaintiff's second cause of action, for breach of the implied warranty of merchantability. Thus, Plaintiff's second cause of action for breach of the implied warranty of merchantability therefore survives dismissal.

3. Defendant did not specifically move to dismiss Plaintiff's third cause of action, for breach of the implied warranty of fitness. Thus, Plaintiff's second cause of action for breach of the implied warranty of fitness therefore survives dismissal.

4. Defendant's motion to dismiss Plaintiff's fourth cause of action, for violation of the CLRA, is GRANTED with leave to amend.

5. Defendant's motion to dismiss Plaintiff's fifth cause of action, for violation of the UCL, is GRANTED with leave to amend.

1   6. Defendant's motion to dismiss Plaintiff's sixth cause of action, for violation of the

2   FAL, is GRANTED with leave to amend.

3   7. Defendant's motion to dismiss Plaintiff's seventh cause of action, for unjust

4   enrichment, is GRANTED with leave to amend.

5   8. Defendant's motion to dismiss Plaintiff's eighth cause of action, for negligent

6   misrepresentation, is GRANTED with leave to amend.

7   9. Defendant's motion to dismiss Plaintiff's ninth cause of action, for fraud, is GRANTED

8   with leave to amend.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order.  Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories.  Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated:  September 8, 2016.

_____
LUCY H. KOH
United States District Judge

16
Case No. 16-CV-02559-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS